# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00162-CR

**Mario Jesus Tames, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF TARRANT COUNTY, 213TH JUDICIAL DISTRICT
NO. 0810591D, HONORABLE ROBERT K. GILL, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted Mario Jesus Tames of aggravated robbery, and the district court assessed sentence at twenty years in prison. Tames contends on appeal that the evidence is legally insufficient to support the conviction. We will affirm the judgment.

This case concerns events arising from Tames=s attempted purchase of a vehicle from Villalpando. Villalpando repossessed the vehicle and took it to his used-car lot after Tames failed to make a necessary payment. Tames then came to Villalpando=s lot and, with the help of companions, reclaimed the vehicle while holding Villalpando=s nephew, Ivan Vasquez, at gunpoint.

Tames contends that the evidence is legally insufficient to prove that he deprived the owner of property because he fully paid for the vehicle and was the owner with a right to possession superior to

Villalpando.  Tames also contends that the evidence is legally insufficient to show that he used the gun in order to obtain or maintain possession of the vehicle.

When reviewing the legal sufficiency of the evidence, we must decide, after viewing all the evidence in the light most favorable to the verdict, whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  *See Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Griffin v. State*, 614 S.W.2d 155, 158-59 (Tex. Crim. App. 1981).  A person commits aggravated robbery if, in the course of appropriating property with the intent to deprive the owner of the property and to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death by using or exhibiting a deadly weapon.  Tex. Pen. Code Ann. '' 29.02(a)(2), 29.03(a)(2), 31.03 (West 1994 & Supp. 2003).

The nature of the oral agreement for the sale of the vehicle was disputed.  Villalpando sold used cars in Fort Worth for his uncle at P&L Auto Sales.  Though he normally used paper transactions, he sold a vehicle to Tames in January 2001 based on an oral agreement because a mutual friend recommended Tames.  The vehicle was owned by P&L Auto Sales.  Villalpando testified that he sold the vehicle to Tames for $10,000C$3,000 of which Tames paid, $3,000 of which was a trade-in allowance, and $4,000 of which Tames owed 60 days after purchase.  Rebecca Tames, appellant=s wife, testified that the sale was complete after the initial payment of the $3,000 and the trade-in.  She said the mutual friend who arranged the sale said that the trade-in was credited for $7,000; she never heard Villalpando make that statement. P&L Auto Sales retained title of the vehicle until April 2001 when it transferred title to Villalpando, who had started his own used-car sales lot.

Villalpando testified that Tames did not pay the remaining balance. Villalpando hired a tow company and went on May 31, 2001 to Tames=s apartment in Dallas to repossess the vehicle. Villalpando testified that Tames threatened to kill him and pulled out a shiny object that Villalpando believed was a gun. The tow-truck driver testified that Tames drove beside him for a while and that there was a gun on Tames=s lap. Tames stopped following them. The tow-truck driver took the vehicle to Villalpando=s car lot. Villalpando found Tames=s identification card inside the repossessed vehicle. He told Vasquez, who managed the used-car lot in his absence, and Ramiro Sanchez, his cousin, about the incident and left them at the used-car lot.

Vasquez testified that he was in the office at the car lot later in the day when Tames and two men arrived. Vasquez testified that Tames came into the office and asked for Villalpando. When Vasquez told him Villalpando was not present, Tames told one of his companions to get his truck. Vasquez testified that, when he got up to stop the man from taking the truck, Tames pulled a gun, pointed it at Vasquez, and told Vasquez not to move; Vasquez was scared, felt threatened, and believed that Tames would shoot him if he moved. Using keys they brought with them, Tames=s companions took the truck, and Tames left as they did. Sanchez related essentially the same facts in his testimony, except that he testified that Vasquez stopped getting up and remained seated when Tames pulled the pistol and told him not to move.

Juan Perez, Tames=s cousin, testified that he drove Tames and a man named Jose (last name unknown) to Fort Worth to retrieve Tames=s wallet from the repossessed vehicle. Perez testified that, when they arrived at the car lot, he and Tames stayed in his car while Jose got out. Perez testified that Tames did not have a gun and did not get out of the car. Perez said that, within thirty seconds, Jose drove off in the

3

repossessed vehicle; Perez said he followed, yelling at Tames. Rebecca Tames testified that her husband did not own a gun and that she had never seen him with one. She testified that Jose drove the vehicle back to their apartment, and that Tames told her, AI got the Suburban back.@

Tames contends that, as the owner of the vehicle, he could not steal it. An owner is a person who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the person charged. Tex. Pen. Code Ann. ' 1.07(35) (West 1994). When Tames reclaimed the vehicle after the repossession, Villalpando had title to the vehicle and it was in his used-car lot. The only disputed element is who had the greater right to possession. There was testimony that Tames had fully paid for the vehicle, but there was also testimony that he had not done so and that he had defaulted by more than two months on his final payment. Viewing the evidence in the light most favorable to the verdict, Villalpando had a greater right to possess the vehicle than Tames. Tames=s contention that, because the car was parked in a lot that the public could access means that Villalpando and Vasquez did not Apossess@ the vehicle, is without support. *See Washington v. State*, 408 S.W.2d 717, 718 (Tex. Crim. App. 1966) (taking laundry vehicle driven by employee is theft from owner). Legally sufficient evidence supports the conclusion that Villalpando was the owner of the vehicle with a right to possession superior to Tames=s right.

Tames contends that there is no evidence that Vasquez could have prevented Jose from taking the vehicle even if Tames had not stopped Vasquez from even trying by pointing a gun at him. He argues that the State had to prove that his use of the gun and the threat was Anecessary@ to take possession of the property. The offense of robbery does not contain an element of necessity. *See* Tex. Pen. Code

4

Ann. ' 29.02. Instead, it requires that, in the course of committing theft, the defendant threaten someone or place them in fear of imminent bodily injury or death Awith *intent* to obtain or maintain control of the property.@ *See id.* (emphasis added). On this record, legally sufficient evidence supports a conclusion that, whether he needed to or not, Tames pointed the gun at Vasquez with the intent to effectuate the transfer of control of the vehicle by ensuring that Vasquez did not prevent Jose from driving the vehicle off the used-car lot and back to Tames=s apartment.

Concluding that legally sufficient evidence supports the conviction, we overrule Tames=s point of error and affirm the judgment.

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Yeakel

Affirmed

Filed: January 30, 2003

Do Not Publish

5