TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00271-CR






Sandy Sendgikoski, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT

NO. 13,654, HONORABLE CHRISTOPHER DARROW DUGGAN, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N



 A jury found Sandy Sendgikoski guilty of two counts of intoxication manslaughter
and found that he used his car as a deadly weapon in committing these offenses. The jury assessed
a term of seventeen-and-one-half years in prison for each offense as punishment, and the trial court
ordered these sentences to run consecutively. Sendgikoski contends that his trial counsel rendered
ineffective assistance by waiting to file a motion to disqualify the trial judge until less than ten days
before the trial date. We will affirm the judgment.

 Sendgikoski and his girlfriend drove around and drank beer for several hours on
February 10, 2009, eventually winding up on Texas Highway 21. Early that evening, Martin Ortiz
was driving west on Farm to Market Road 812 and Dan Richards was driving east on the same road.
Both were in pickup trucks and both were driving toward Texas 21. Sendgikoski exited Texas 21
and rolled through a stop sign into its intersection with FM 812. He struck Ortiz's truck on the
side and sent it airborne into a cab-to-cab collision with Richards's truck. Ortiz died at the scene,
and Richards died twelve days later as a result of injuries sustained in the crash. Sendgikoski's
blood-alcohol level was 0.28--more than three times the legal limit for drivers. See Tex. Penal Code
Ann. §§ 49.01(2)(B), 49.04 (West 2011). Sendgikoski was indicted for two counts of intoxication
manslaughter.

 Trial was set for April 12, 2010. Sendgikoski's trial attorney, Joe Tuck, proposed
a plea bargain that he said the State favored until Richards's family objected. On April 6, 2010,
the State rejected the plea offer and filed a motion to have any sentences run consecutively. The
next day, Sendgikoski filed a motion to disqualify District Judge Christopher Duggan alleging
that the judge may have had a previous association with Richards. The motion alleged that, while
Judge Duggan served eighteen years as a prosecutor in Travis County, Richards was the chief deputy
sheriff for Travis County, and that their presumed relationship would affect the judge's ability
to be fair and impartial. Judge Duggan referred the case to the administrative judge for a hearing
on the motion.

 A visiting judge held a hearing on the motion, during which Tuck asserted that
Judge Duggan must have known Richards at least indirectly and would have difficulty being fair in
a trial concerning the cause of Richards's death. Tuck stated that he had been disappointed in several
rulings by the court and concerned by the manner in which the court ruled during the process leading
up to trial. He nevertheless had expected the State to agree to, and the court to accept, the plea
bargain that would have limited his client's maximum sentence to twenty years. Tuck testified that
he withheld filing the motion to disqualify until the State rejected the plea bargain and filed the
motion to have any sentences run consecutively, and thereby increased the chance that his client
would be sentenced to forty years in prison. Tuck said that the sentencing exposure combined with
his concerns about Judge Duggan's perceived bias compelled him to file the motion to disqualify.
A visiting judge heard and denied the motion to disqualify without stating a basis.

 Judge Duggan then presided over the trial at which the jury found Sendgikoski guilty
on both counts and assessed a sentence of seventeen-and-one-half years in prison on each count. The
trial court then ordered the sentences to be served consecutively. Sendgikoski's appellate counsel
filed a motion seeking a new trial "in the interest of justice" without further detail.

 Sendgikoski asserts on appeal that the judgment should be reversed because
he received ineffective assistance of counsel at trial. He argues that Tuck rendered ineffective
assistance by waiting to file the motion to disqualify until the eve of trial. He contends that the
motion was due at least ten days before trial. See Tex. R. Civ. P. 18a(c); see also Arnold v. State,
853 S.W.2d 543, 544 (Tex. Crim. App. 1993) (en banc) (civil appellate rules govern removal
of judges in criminal trials). He asserts that Tuck knew that the sentences could be stacked even
without a motion by the State long before April 6 and that his untimeliness in seeking removal of
the judge barred Sendgikoski from complaining about the judge presiding over the trial.

 To establish ineffective assistance, a defendant must show that (1) counsel's
performance fell below an objective standard of reasonableness, and (2) counsel's deficient
performance prejudiced the defense, resulting in an unreliable or fundamentally unfair outcome of
the proceeding. Strickland v. Washington, 466 U.S. 668, 687-88 (1984); Davis v. State, 278 S.W.3d
346, 352 (Tex. Crim. App. 2009). We must indulge a strong presumption that counsel's conduct
fell within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 771;
Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To overcome this presumption,
the record must affirmatively demonstrate the alleged ineffectiveness. Mallett v. State, 65 S.W.3d
59, 63 (Tex. Crim. App. 2001). We review the effectiveness of counsel in light of the totality of
the representation and particular circumstances of each case. Thompson v. State, 9 S.W.3d 808, 813
(Tex. Crim. App. 1999). To establish deficient performance as a matter of law under the first prong,
a defendant must show that no reasonable trial strategy could justify counsel's conduct. Strickland,
466 U.S. at 689; Andrews v. State, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005). A defendant
establishes prejudice under the second prong if he shows that a reasonable probability exists that,
but for the deficient performance, the outcome of the proceeding would have been different. See
Strickland, 466 U.S. at 687-88, 694; Ex parte Cash, 178 S.W.3d 816, 818 (Tex. Crim. App. 2005).
A reasonable probability is one sufficient to undermine confidence in the outcome. Strickland,
466 U.S. at 694.

 We conclude first that Sendgikoski has not shown that his trial counsel's motion
to disqualify was untimely. A judge may be removed because he is disqualified or because he is
subject to recusal by rule, and the grounds and procedures for each type of removal are different. 
See In re Union Pac. Res. Co., 969 S.W.2d 427, 428 (Tex. 1998) (orig. proceeding). Sendgikoski
asserted in his motion titled "Defendant's Motion to Disqualify Judge" that the circumstances of
the case would affect Judge Duggan's "ability to be fair and impartial." Judicial bias is a ground for
disqualification in those cases in which the bias is shown to be of such a nature and to such an extent
as to deny a defendant due process of law--a right guaranteed by the federal and state constitutions. 
U.S. Const. Amend. XIV, § 1; Tex. Const. art. 1, § 19; Wesbrook v. State, 29 S.W.3d 103, 121
(Tex. Crim. App. 2000). Disqualification cannot be waived where it arises from a constitutional
provision. Woodland v. State, 178 S.W.2d 528, 529 (Tex. Crim. App. 1944). Disqualification of
a judge for bias that denies due process may be raised at any time. See Gamez v. State, 737 S.W.2d
315, 318 (Tex. Crim. App. 1987). Thus, the timing of the filing did not prevent Sendgikoski from
having his motion to disqualify heard. He has not shown that the timing of Tuck's filing of the
motion constituted deficient performance.

 Even if his motion to disqualify were actually a motion to recuse and the limitations
of rule of procedure 18a rendered his motion to remove the judge untimely, (1) Sendgikoski
has not shown that Tuck rendered ineffective assistance. Tuck's decision to try to get the plea deal
accepted before urging removal of the judge may have been sound trial strategy. Tuck alleged
that the late filing of the motion caused a negative reaction by Judge Duggan in this and other
cases involving Tuck and his firm. Even if the timing of the motion--rather than its substance or
some other unrelated factor--caused the trial judge's alleged negative reaction, we cannot say
that Tuck's delay in filing was ineffective assistance of counsel. We also cannot say that Tuck
acted unreasonably when he did file the motion to disqualify, given that he believed the judge was
biased. Further, Sendgikoski has not demonstrated that this one action rendered Tuck's entire
performance ineffective. Indeed, he does not complain about the remainder of Tuck's performance,
which included filing numerous pretrial motions, negotiating a plea agreement that allegedly almost
resolved the matter, and calling, questioning, and cross-examining witnesses at trial. We conclude
that Sendgikoski has not demonstrated that the timing and the filing of the motion to disqualify
rendered Tuck's performance as counsel so deficient as to be ineffective assistance of counsel.

 Finally, we cannot conclude that a reasonable probability exists that the outcome of
the proceeding would have been different but for the allegedly late filing of the motion. Sendgikoski
has not shown that the result of the hearing on the motion to disqualify would have been any
different had Tuck filed the motion at least ten days before trial. Regardless of the timing of the
motion to disqualify, a visiting judge held a hearing on its substance and denied it without stating
that his denial was based on the timing of the filing of the motion. Sendgikoski complains that the
late filing of the motion to disqualify barred appellate review. Even if that were true, the record of
the motion to disqualify does not show that the visiting judge erred in denying the motion to
disqualify. Sendgikoski has not shown that the timing of the filing of the motion had any effect on
the ruling on the motion.

 More critically, Sendgikoski has not demonstrated that any alleged tardiness in the
filing of the motion to disqualify had any effect on the outcome of the case. We find ample support
in the record for concluding that the facts of the case controlled the outcome. Sendgikoski drove his
vehicle after consuming more than a dozen beers, leading to intoxication at 3.5 times the legal limit.
He testified that the intersection was "horrible," but conceded that it would have been no problem
if he had been sober. Instead, he failed to stop at a stop sign, caused a chain reaction collision, and
two people died as a result. Sendgikoski testified that having a DWI was the norm in his group
of friends and that he had not previously understood the potential severity of the effect that his
driving while drunk could have on others. He made this statement despite having been convicted
in 2001 of driving while intoxicated and put on community supervision that was later revoked. The
evidence and testimony strongly support the conviction, and Sendgikoski has not shown how
the timing of the filing of the motion to disqualify had any effect on the outcome of the case. Even
so, the jury did not impose the maximum sentence of twenty years for each offense. We cannot
conclude that the jury found Sendgikoski guilty or sentenced him more harshly as a result of the
allegedly late filing of the motion to disqualify. Further, there is no showing that the trial court
ordered the sentences to run consecutively as a result of the timing or the filing of the motion to
disqualify or because of any bias. The trial judge could reasonably have been persuaded that the
circumstances of this case merited a stronger message of punishment and deterrence than concurrent
sentences would provide. We cannot conclude based on this record that a reasonable probability
exists that, but for Tuck's filing the motion to disqualify less than ten days before trial, the outcome
of the proceeding would have been better for Sendgikoski. He has not demonstrated that Tuck's
performance constituted ineffective assistance requiring reversal.

 We affirm the judgment.



 

 Jeff Rose, Justice

Before Justices Henson, Rose and Goodwin

Affirmed

Filed: August 19, 2011

Do Not Publish
1. Some courts have determined that, if the grounds for filing a motion to recuse are not
apparent until less than ten days before trial, a party may file a motion to recuse despite the
limitations of Texas Rule of Civil Procedure 18a. See, e.g., Keene Corp. v. Rogers, 863 S.W.2d 168,
171-72 (Tex. App.--Texarkana 1993, no writ).